UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

ROSALINDA D.,[1]

Plaintiff,

v.

FRANK BISIGNANO, Commissioner of Social Security,[2]

Defendant.

Case No.:  24cv1487-W(LR)

**REPORT AND RECOMMENDATION REGARDING JOINT MOTION FOR JUDICIAL REVIEW OF THE FINAL DECISION OF THE COMMISSIONER OF SOCIAL SECURITY**

**[ECF No. 12]**

This Report and Recommendation is submitted to the Honorable Thomas J. Whelan, United States District Judge, pursuant to 28 U.S.C. § 636(b)(1) and Civil Local

---

[1]  Pursuant to Civil Local Rule 7.1(e)(6)(b), the Court's opinions in Social Security cases filed under 42 U.S.C. § 405(g) "refer to any non-government parties by using only their first name and last initial."

[2]  Plaintiff named Martin O'Malley, who was the Commissioner of Social Security when Plaintiff filed her Complaint on August 21, 2024, as a Defendant in this action.  (See ECF No. 1 at 1.)  Frank Bisignano is now the Commissioner of Social Security Administration, and he is automatically substituted as a party pursuant to Federal Rule of Civil Procedure 25(d).

1

Rule 72.1(c) of the United States District Court for the Southern District of California. On August 21, 2024, Rosalinda D. ("Plaintiff") filed a Complaint pursuant to 42 U.S.C. § 405(g) seeking judicial review of a decision by the Commissioner of Social Security ("Defendant") denying Plaintiff's application for supplemental security income benefits under Title XVI. (ECF No. 1.)

Now pending before the Court is the parties' "Joint Motion for Judicial Review." (ECF No. 12 ("J. Mot.").) For the reasons set forth below, the Court **RECOMMENDS** that the Commissioner's decision be **REVERSED**, and that Judgment be entered reversing the decision of the Commissioner and remanding this matter for further administrative proceedings.

## I. PROCEDURAL BACKGROUND

On June 1, 2020, Plaintiff filed an application for Supplemental Security Income benefits under Title XVI of the Social Security Act (the "Act"). (ECF No. 8 ("AR")[3] at 63–65, 217–23; see also ECF No. 1 at 1.) Plaintiff originally reported her onset date as May 5, 2019, but she amended the onset date to June 1, 2020, during the administrative hearing. (See AR at 17, 65; see also ECF No. 1 at 2.) After Plaintiff's application was denied initially and on reconsideration, she requested a hearing before an Administrative Law Judge ("ALJ"). (AR at 83, 109, 124.) An administrative hearing was held on December 12, 2023. (See id. at 37–63.) Plaintiff appeared at the hearing with counsel, and testimony was taken from her and a vocational expert ("VE"). (See id.)

On February 26, 2024, the ALJ issued a written decision finding that Plaintiff had not been under a disability, as defined in the Social Security Act, from June 1, 2020, through the date of the decision. (Id. at 14, 17–18, 26.) The ALJ's decision became the

---

[3] "AR" refers to the Administrative Record filed on October 21, 2024. (ECF No. 8.) The Court's citations to the AR in this Report and Recommendation are to the pages listed on the original document rather than the page numbers designated by the Court's Case Management/Electronic Case Filing System ("CM/ECF"). For all other documents, the Court's citations are to the page numbers affixed by CM/ECF.

24cv1487-W(LR)

final decision of the Commissioner on July 8, 2024, when the Appeals Council denied Plaintiff's request for review.  (Id. at 2–6.)  This timely civil action followed.  (See ECF No. 1.)

## II.  SUMMARY OF THE ALJ'S FINDINGS

In rendering his decision, the ALJ followed the Commissioner's five-step sequential evaluation process.  See 20 C.F.R. § 416.920.  At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset of her disability.  (AR at 19.)  At step two, the ALJ determined that Plaintiff had the following severe impairments: "major depressive disorder; learning disorder, reading, writing; diabetes mellitus, hypertension, obesity, and hypothyroid."  (Id.)  At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the impairments listed in the Commissioner's Listing of Impairments.  (Id. at 20.)  Next, the ALJ determined that Plaintiff had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. 416.967(b), except Plaintiff was limited to "understanding, remembering, and carrying out simple, routine, and repetitive tasks," and "occasional interaction with the public." (Id. at 23.)

At step four, the ALJ determined that Plaintiff could perform her past relevant work as a cook helper[4] (DOT 317.687-010), "as Plaintiff actually performed that work." (Id. at 25–26.)  The ALJ then found that Plaintiff had not been disabled from June 1, 2020, through the date of the ALJ's decision.  (Id. at 26.)

/ / /

/ / /

/ / /

---

[4]  The Court notes that the parties and the ALJ also refer to this job as a "breakfast attendant."  (See J. Mot. at 5, 7, 11, 13, 22, 24, 26; AR at 25, 43.)  The Court's references to the "breakfast attendant" job and "cook helper" job (as the VE and the ALJ classified the position) in this Report and Recommendation concern the same job that Plaintiff performed in the past.

24cv1487-W(LR)

## III.  DISPUTED ISSUES

As reflected in the parties' Joint Motion, Plaintiff is raising the following issues as grounds for reversal and remand: (1) whether the ALJ properly evaluated the non-examining medical source opinion of the State agency psychologist, John Petzelt, Ph.D.; (2) whether the ALJ properly evaluated the examining medical source opinion of the consultative psychologist, Scott Hilborn, Ph.D.; and (3) whether the ALJ properly developed the record regarding the mental and physical demands of Plaintiff's past relevant work to determine whether she could perform such work as "actually performed."  (J. Mot. at 3.)

## IV.  STANDARD OF REVIEW

Section 405(g) of the Social Security Act allows unsuccessful applicants to seek judicial review of the Commissioner's final decision.  42 U.S.C. § 405(g).  The scope of judicial review is limited, and the denial of benefits will not be disturbed if it is supported by substantial evidence in the record and contains no legal error.  See id.; Buck v. Berryhill, 869 F.3d 1040, 1048 (9th Cir. 2017).  "Substantial evidence means more than a mere scintilla, but less than a preponderance.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Revels v. Berryhill, 874 F.3d 648, 654 (9th Cir. 2017) (quoting Desrosiers v. Sec'y Health & Hum. Servs., 846 F.2d 573, 576 (9th Cir. 1988)).  In determining whether the Commissioner's decision is supported by substantial evidence, a reviewing court "must assess the entire record, weighing the evidence both supporting and detracting from the agency's conclusion," and "may not reweigh the evidence or substitute [the court's] judgment for that of the ALJ."  Ahearn v. Saul, 988 F.3d 1111, 1115 (9th Cir. 2021).  Where the evidence can be interpreted in more than one way, the court must uphold the ALJ's decision.  Id. at 1115–16; Attmore v. Colvin, 827 F.3d 872, 875 (9th Cir. 2016).  The Court may consider "only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which [he or she] did not rely."  Revels, 874 F.3d at 654 (internal quotation omitted).

# V.  MEDICAL RECORDS AND TESTIMONY

## A.  <u>Relevant Medical Records</u>

On May 27, 2020, Alex Vanderzant, P.A. examined Plaintiff.  (AR at 407–11.)  He noted that Plaintiff had type II diabetes, hypothyroidism,[5] hypertension,[6] and hypocholesterolemia.[7]  (<u>Id.</u>)  P.A. Vanderzant further stated that Plaintiff had an appropriate mood and was not in acute distress, but recommended continuing Atorvastatin,[8] as well as improving her diet and losing weight.  (<u>Id.</u> at 410.)  In a follow-up visit on July 24, 2020, P.A. Vanderzant again recommended weight loss to Plaintiff and increased her dosage of Levothyroxine.[9]  (<u>Id.</u> at 413, 416.)

On October 2, 2020, Plaintiff was screened for depression, and her score of eighteen indicated "[m]oderately severe depression."  (<u>Id.</u> at 445, 448.)  During several subsequent visits, Plaintiff reported taking her prescribed medications, but failed to provide her blood sugar log.  (<u>See id.</u> at 438, 466.)  On March 11, 2021, Plaintiff reported chest pain, burning of extremities, frequent infections, foot ulcers, increased fatigue,

---

[5]  "Hypothyroidism is a condition associated with a deficiency in thyroid secretion, resulting in a lowered basal metabolism."  <u>United States v. Buscher</u>, No. 205-CR-201 JCM RJJ, 2007 WL 2264536, at *2 (D. Nev. Aug. 3, 2007) (citation omitted).

[6]  Hypertension, also known as high blood pressure, when uncontrolled, increases a person's risk of serious health problems, such as heart attacks and strokes.  <u>See</u> https://www.mayoclinic.org/diseases-conditions/high-blood-pressure/symptoms-causes/syc-20373410 (last visited July 25, 2025).

[7]  Hypercholesterolemia is a disease that affects how the body processes cholesterol.  <u>See</u> https://newsnetwork.mayoclinic.org/discussion/mayo-researchers-study-genetic-basis-of-high-cholesterol-in-adults/ (last visited July 25, 2025).

[8]  Atorvastatin is used to reduce the risk of heart attack and stroke.  <u>See</u> <u>Abbink v. Berryhill</u>, Case No. SACV 16-0324-JPR, 2017 WL 1496918, at *5 n.10 (C.D. Cal. Apr. 25, 2017) (citation omitted).

[9]  Levothyroxine is a thyroid hormone, which is used to treat hypothyroidism, a condition in which the thyroid gland does not produce enough thyroid hormone.  <u>See</u> <u>Womack v. Colvin</u>, No. CV 13–7094–JPR, 2014 WL 3704538, at *4 n. 8 (C.D. Cal. July 24, 2014) (citation omitted).

5

polydipsia,[10] slow healing wounds, and heartburn.  (Id. at 474.)  On May 13, 2021, P.A. Vanderzant noted that Plaintiff was compliant with taking her medications.  (Id. at 537.)

On November 24, 2020, Peter Holm, M.D., conducted a consultative mental status examination of Plaintiff, and noted that Plaintiff's chief complaint was depression and anxiety, which had begun a year before.  (Id. at 423–24.)  Dr. Holm also noted that Plaintiff had a history of diabetes "not well controlled," hypertension, elevated lipids, and hypothyroidism.  (Id. at 423.)  Plaintiff reported hearing her deceased mother's voice several times a week, depressed mood, paranoia, insomnia, limited energy, and difficulty concentrating.  (Id.)  Dr. Holm stated that Plaintiff "denies interactional problems with people other than she isolates, and is generally paranoid about strangers."  (Id.)  During Plaintiff's mental status examination, she could not spell the word "world" backwards or forwards; could only repeat four numbers forward and two numbers backwards; could not do simple mathematic equations; and reported that if she found a sealed, addressed, and stamped envelope, she would leave it where she found it.  (Id. at 424.)  Dr. Holm determined that Plaintiff was of "below average" intelligence, and diagnosed her with major depression and specific learning disorders with impairments in mathematics, reading, and written expression.  (Id.)

On June 2, 2021, Dr. Petzelt, A State agency psychologist, assessed Plaintiff's mental RFC.  (Id. at 76–79.)  He determined that Plaintiff's ability to respond appropriately to changes in the workplace was moderately limited, and she had understanding and memory limitations.  (Id. at 77, 79.)  Dr. Petzelt noted that Plaintiff was easily overwhelmed when dealing with stress and frequently cried.  (Id. at 75.)  He opined that Plaintiff was "able to relate appropriately to and work with supervisors and co-workers, but due to social withdrawal would do better on tasks involving no contact

---

[10]  Polydipsia causes people to "constantly feel thirsty and drink lots of fluids."  See https://www.mayoclinic.org/diseases-conditions/diabetes-insipidus/symptoms-causes/syc-20351269 (last visited July 25, 2025).

with the general public in order to avoid stress." (Id. at 76.) Dr. Petzelt also opined that Plaintiff had the ability to: perform simple and lower level detailed instructions, but would struggle with higher detailed tasks; focus on work activities and lower level tasks for two-hour periods in a standard work week; ask simple questions and make requests for assistance; and generally regulate her emotions, but might infrequently experience difficulty in responding in an appropriate manner. (Id. at 80.)

On February 28, 2023, Dr. Hilborn, a Clinical Psychologist, conducted a consultative examination of Plaintiff. (Id. at 671–73.) Plaintiff reported a history of depression, including symptoms of sadness, anhedonia, feelings of worthlessness, increased appetite, and reduced energy and concentration. (Id. at 671.) She also reported visual and auditory hallucinations, although Dr. Hilborn noted that perceptual abnormalities were not apparent during the evaluation. (Id. at 671–72.) Additionally, Dr. Hilborn documented that Plaintiff's social functioning was limited to her family. (Id. at 672.) Dr. Hilborn diagnosed Plaintiff with "Major Depressive Disorder, Recurrent Episode, Severe with Psychotic Features." (Id. at 673.) He determined that Plaintiff was unable to complete tasks in a timely manner due to emotional and physical symptoms. (Id. at 672.) Dr. Hilborn opined that Plaintiff's comprehension and ability to understand, remember, and apply information in a work setting was "somewhat impaired," but she was capable of understanding and carrying out simple instructions. (Id. at 673.) He also opined that Plaintiff was capable of following one- and two-step oral instructions to carry out tasks, recall and use information to perform work tasks, and use reason and judgment to make simple work-related decisions. (Id.) Additionally, Dr. Hilborn opined that Plaintiff's ability to interact effectively with peers and coworkers was "somewhat impaired," and her executive functions were "fair." (Id.)

/ / /

/ / /

/ / /

/ / /

24cv1487-W(LR)

**B.      Plaintiff's Administrative Hearing**

Plaintiff testified that despite undergoing a cataract surgery, she still had difficulties with her vision.  (Id. at 42–43.)  She also stated that she took insulin, thyroid medication, and antidepressants.  (Id. at 50.)

Plaintiff further testified that she had worked as a breakfast attendant at Best Western hotel from 2016 to 2018, where she "was doing the breakfast for the guests in the hotel."  (Id. at 43.)  She stated that she stopped working because she was falling and losing her balance at work due to pain in her legs and thyroid issues.  (Id. at 44.)  Plaintiff also testified that in 2022, she returned to her breakfast attendant position at Best Western, but subsequently quit due to issues with her eyesight, balance, and because she "was too slow . . . wasn't doing good, [and because] the people complained."  (Id. at 45.)  Plaintiff stated that she could not work in a similar position because pain and swelling in her legs caused her to fall, she was struggling with depression and anxiety, and had difficulty in public and with large crowds.  (See id. at 46, 55.)

The ALJ asked the VE if she had read Plaintiff's application and listened to Plaintiff's testimony, and the VE responded that she did.  (Id. at 57–58.)  The ALJ further inquired if the VE needed additional information about Plaintiff's past relevant work, and the VE asked the ALJ to confirm what Plaintiff's lifting demands were at her breakfast attendant job.  (Id.)  The ALJ then asked Plaintiff what was the heaviest item Plaintiff had to lift and carry at her past job, and Plaintiff responded that she had to lift "the whole box of eggs" and carry them to the kitchen table.  (See id. at 58–59.)  Plaintiff did not specify or estimate how much the box of eggs weighed, but explained that the box contained approximately twenty-seven eggs.  (See id. at 59.)

The VE relied on the Dictionary of Occupational Titles ("DOT") and classified Plaintiff's past relevant work as a "cook helper" (DOT 317.687-010), with a "strength definition of medium, SVP: 2," performed "at a light level."  (Id.)  The ALJ asked the VE whether a hypothetical person with Plaintiff's age, education, and experience, and RFC limited to "work at the light exertional level," "performing simple, routine, and repetitive

24cv1487-W(LR)

tasks," and "occasional interactions with the general public" could perform Plaintiff's past work, and the ALJ opined that such individual could perform Plaintiff's past work as she actually performed it.  (Id. at 59–60.)  The ALJ then asked the VE if the VE's testimony was consistent with the DOT, and the VE responded, in relevant part, that her testimony was not consistent with the DOT because of "the difference between the jobs actually performed versus generally performed."  (See id. at 61.)  When the ALJ asked the VE what was the basis for her testimony, the VE responded that her testimony was "based on [her] education, training, and experience."  (Id.)

**C.    Plaintiff's Reports and Third-Party Report**

### 1.  Plaintiff's Work History Report

In her Work History Report, Plaintiff described her breakfast attendant job at the Best Western hotel.  (Id. at 244–45.)  She stated that she "cooked breakfast all day," and used "machines, tools, or equipment," and "technical knowledge or skills."  (Id. at 245.)  Plaintiff also indicated that she had to walk, sit, climb, kneel, and "handle, grab or grasp big objects" for one hour per day, stand for five hours per day, and lift and carry objects from counter to counter daily.  (See id.)  She noted that the heaviest weight she lifted and the weight she most frequently lifted was "10 lbs."  (Id.)

### 2.  Plaintiff's disability report and questionnaire

Plaintiff listed the following physical and mental conditions that limited her ability to work: high blood pressure, hypertension, high cholesterol, diabetes, anxiety, and depression.  (Id. at 264.)  Plaintiff reported that she could not stand due to tingling and swelling in her legs, but was able to cook meals, clean, and do laundry.  (Id. at 270, 272.)  Additionally, Plaintiff stated that her illnesses and conditions impacted her ability to lift, squat, bend, stand, kneel, walk, sit, climb stairs, see, remember, and understand.  (Id. at 275.)

/ / /

/ / /

/ / /

24cv1487-W(LR)

### 3. Third-party report from Plaintiff's son

Plaintiff's son Alexander reported that Plaintiff "gets anxiety, gets confused, [and] does not understand right away," which limits her ability to work. (<u>Id.</u> at 281.) He also noted that Plaintiff's conditions impacted her ability to walk, sit, talk, hear, see, and climb stairs. (<u>Id.</u> at 282, 285, 287.) Alexander further stated that Plaintiff took multiple medications, which gave her adverse side effects. (<u>Id.</u> at 288.) Additionally, he reported that Plaintiff did not handle stress well, got overwhelmed, cried, was anxious, and "want[ed] to be left alone." (<u>Id.</u> at 285–87.)

## VI. DISCUSSION

### A. <u>The ALJ Improperly Evaluated Dr. Petzelt's Opinion</u>

#### 1. Parties' arguments

Plaintiff argues that the ALJ improperly evaluated the opinion of State agency psychologist, Dr. Petzelt. (J. Mot. at 3–8, 12–14.) Specifically, Plaintiff alleges that the ALJ improperly evaluated the supportability and consistency of Dr. Petzelt's opinion limiting Plaintiff to no public contact. (<u>Id.</u> at 5, 7–8.) Plaintiff contends that Dr. Petzelt's opinion was well-supported because he explained that Plaintiff should avoid public interaction due to social withdrawal and to minimize stress, and summarized medical notes that documented Plaintiff's difficulty dealing with stress and social withdrawal. (<u>Id.</u> at 6 (citing AR at 74–75, 80).) Plaintiff asserts that the ALJ failed to develop the record by asking Plaintiff about social demands of her past work as a breakfast attendant, speculated regarding the degree of public interaction that job required, and did not recognize that Plaintiff was forced to discontinue her breakfast attendant job because of her impairments. (J. Mot. at 7.) Plaintiff maintains that the ALJ's error was harmful, because the RFC the ALJ assessed for Plaintiff and hypothetical questions the ALJ posed to the VE did not contain the limitation Dr. Petzelt assessed; and the VE's testimony therefore did not constitute substantial evidence to support the ALJ's step four determination that Plaintiff was not disabled because she could return to her past relevant work. (<u>Id.</u> at 8.)

24cv1487-W(LR)

1   Defendant responds that the ALJ reasonably evaluated Dr. Petzelt's opinion.  (Id.

2   at 9–12.)  In support, Defendant states that the ALJ properly considered both the

3   supportability and consistency of Dr. Petzelt's opinion.  (Id. at 9.)  Defendant contends

4   that the ALJ properly found that Dr. Petzelt's opinion limiting Plaintiff to no contact with

5   the public was not well-explained and inconsistent with Plaintiff's work as a breakfast

6   attendant at the hotel.   (Id. at 11.)  Further, Defendant contends that Dr. Petzelt

7   determined that Plaintiff had no limitations in social interaction.  (Id.)  Defendant

8   therefore asserts that the ALJ's decision was supported by substantial evidence in the

9   record.  (Id. at 9, 11.)

10          **2. Applicable law**

11          In evaluating the intensity and persistence of a claimant's symptoms, an ALJ must

12   consider all available evidence from medical and nonmedical sources about how the

13   claimant's symptoms affect the claimant.  20 C.F.R. § 416.929(c)(1).  Revised

14   regulations apply to an ALJ's analysis of medical opinion evidence for claims filed on or

15   after March 17, 2017.  See Revisions to Rules Regarding the Evaluation of Medical

16   Evidence, 82 Fed. Reg. 5844-01, 5867–68.  Under the revised regulations, an ALJ is no

17   longer required to "defer or give any specific evidentiary weight, including controlling

18   weight, to any medical opinion(s)."  20 C.F.R. § 416.920c(a).  Instead, an ALJ is required

19   to consider all medical opinions in the record and evaluate each medical opinion's

20   persuasiveness using factors, which include supportability, consistency, relationship with

21   the claimant, and specialization.  Id. § 416.920c(c).

22          Supportability and consistency are the two most important factors in determining a

23   medical opinion's persuasiveness.  Id.  An ALJ is required to articulate how the ALJ

24   considered the supportability and consistency factors for a medical source's opinions.  Id.

25   § 416.920c(b)(2); see also Kitchen v. Kijakazi, 82 F.4th 732, 739 (9th Cir. 2023) (stating

26   that an ALJ must provide an explanation, which is supported by substantial evidence,

27   articulating how the ALJ considered both supportability and consistency factors).

28   Supportability means the extent to which a medical source supports the medical opinion

24cv1487-W(LR)

by explaining the relevant objective medical evidence.  See 20 C.F.R. § 416.920c(c)(1); see also Woods v. Kijakazi, 32 F.4th 785, 791–92 (9th Cir. 2022).  Consistency means the extent to which a medical opinion is consistent with evidence from other medical and nonmedical sources.  See 20 C.F.R. § 416.920c(b)(3); Woods, 32 F.4th at 792.  Under the new regulations, an ALJ's decision, "including the decision to discredit any medical opinion, must simply be supported by substantial evidence."  Woods, 32 F.4th at 787.

Although the revised regulations provide new terms that an ALJ must use in evaluating medical opinion evidence, an ALJ still may not cherry-pick evidence in discounting a medical opinion.  See Colter v. Berryhill, 685 F. App'x 616, 617 (9th Cir. 2017) (citing Ghanim v. Colvin, 763 F.3d 1154, 1164 (9th Cir. 2014)) ("The ALJ failed to analyze the periods of improvement in the context of [the claimant's]  treatment history to ensure that the improvement was not temporary.").  Nor may an ALJ dismiss medical opinions without providing detailed explanations.  See Regenmitter v. Comm'r of Soc. Sec. Admin., 166 F.3d 1294, 1299 (9th Cir. 1999) ("The ALJ must do more than offer his own conclusions.  He must set forth his own interpretation and explain why they, rather than [the claimant's medical providers'], are correct.").

### 3.  Analysis

Dr. Petzelt, a State agency psychologist, opined that "due to social withdrawal [Plaintiff] would do better on tasks involving no contact with the general public in order to avoid stress."  (AR at 76.)  The ALJ found that this portion of Dr. Petzelt's opinion was not well explained and inconsistent with Plaintiff's prior work as a breakfast attendant at a hotel.  (Id. at 25.)  The ALJ reasoned that the record did not contain any evidence of "major interpersonal conflicts associated with [Plaintiff's] work activity or otherwise described in the record," and found that Plaintiff was limited to "no more than occasional interaction with the public."  (Id.)

The first reason the ALJ cited to discount Dr. Petzelt's opinion was that the opinion was not well explained.  (See id.)  With respect to supportability of the opinion, the "more relevant the objective medical evidence and supporting explanations presented

24cv1487-W(LR)

by a medical source are to support his or her medical opinion(s), the more persuasive the medical opinions . . . will be." See 20 C.F.R. § 416.920c(c)(1).  Dr. Petzelt explained in his opinion that Plaintiff should avoid public interaction due to social withdrawal to avoid stress.  (See AR at 80.)  In reaching this conclusion, Dr. Petzelt summarized the results of Plaintiff's treatment notes and consultative evaluations, which documented Plaintiff's social withdrawal and difficulty dealing with stress.  (See id. at 74–75 (stating that during three separate appointments in September and October 2020, Plaintiff reported several stressors, including recent deaths of family members and racing thoughts); id. (noting that during Plaintiff's October 24, 2020 examination, she was tearful); id. at 74 (noting that during November 2020 consultative evaluation with Dr. Holm, Plaintiff had blunted affect, diminished eye contact and psychomotor functioning, and "tend[ed] to isolate herself from others"); id. at 75 (citing third-party report from Plaintiff's son that Plaintiff was easily overwhelmed when dealing with stress, frequently cried, and was socially withdrawn).)  Accordingly, substantial evidence in the record does not support the ALJ's conclusion that the portion of Dr. Petzelt's opinion restricting Plaintiff to no contact with the public was unexplained and unsupported.

The other reason the ALJ cited to discount Dr. Petzelt's opinion was that it was inconsistent with Plaintiff's "nearly six months of work as a breakfast attendant at a hotel."  (Id. at 25.)  With respect to consistency, the "more consistent a medical opinion(s) is with the evidence from other medical sources in the claim, the more persuasive the medical opinion(s) . . . will be."  20 C.F.R. § 416.920c(c)(2).  As discussed in detail in section VI.C.3, there was no evidence in the record regarding mental demands of Plaintiff's breakfast attendant job, (see AR at 37–63), and the ALJ merely speculated regarding the degree of public interaction required by the position.  Notably, the ALJ acknowledged that Plaintiff returned to her breakfast attendant position in 2022, but left in less than six months, and found that Plaintiff's work as a breakfast attendant at Best Western hotel in 2022 was an "unsuccessful work attempt."  (Id. at 19); see also McKenzie v. Apfel, No. C-00-0425-CAL, 2001 WL 58845, at *4 (N.D. Cal.

Jan. 5, 2001) (citing SSR 84–25, 1984 WL 49799 (1984)) (providing that "unsuccessful work attempt" is a "work effort limited to six months" that "ended or [was] reduced to the non-substantial gainful activity level due to the impairment or the removal of special considerations that are essential to the performance of work."). Courts have previously determined that an ALJ cannot solely rely on the claimant's unsuccessful work attempt to discount a medical opinion that assessed functional limitations greater than those assessed by the ALJ. See Bonnie B. v. Saul, Case No.: 3:20-cv-00653-RBM, 2020 WL 7695332, at *5 (S.D. Cal. Dec. 28, 2020) (finding that "[a] failed 'work attempt alone is not a clear and convincing reason' to reject a [medical] opinion"); Jalexis O. v. Berryhill, No. 6:17-cv-00172-MC, 2018 WL 4931996, at *8 (D. Or. Oct. 10, 2018) (finding that "the ALJ . . . cannot use an unsuccessful work attempt to discredit the [medical] opinion," which "assesses limitations that would not allow a successful return to work").

Additionally, clinical findings in the record were consistent with Dr. Petzelt's opinion that Plaintiff would have limitations in handling stress and when dealing with the public. (See, e.g., AR at 423–24 (containing Dr. Helm's November 24, 2020 psychological evaluation findings documenting Plaintiff's diminished eye contact and psychomotor activity, depressed mood, blunted affect, paranoia, inability to spell a simple word or perform simple calculations, and difficulty understanding a simple proverb, and documenting that Plaintiff socially isolated and "[wa]s generally paranoid about strangers"); id. at 671–73 (containing Dr. Hilborn's February 23, 2023 mental status examination notes and findings documenting Plaintiff's depressed mood, impaired delayed recall, impaired working memory, inability to solve a math problem and spell a simple word backwards, and noting that Plaintiff's social functioning was limited to her family).) Accordingly, the ALJ's conclusion was not supported by substantial evidence.

For all the forgoing reasons, the Court finds that the ALJ improperly evaluated the persuasiveness of Dr. Petzelt's opinion, including the most important factors of consistency and supportability. The ALJ therefore erred by improperly evaluating Dr. Petzelt's opinion that limited Plaintiff to no public contact.

The Court next examines whether the ALJ's error was harmless.  An error is harmless if it is inconsequential to the ALJ's ultimate nondisability determination.  See Rounds v. Comm'r Soc. Sec. Admin., 807 F.3d 996, 1007 (9th Cir. 2015) (finding that the ALJ's error was harmless because it was "inconsequential to the ultimate nondisability determination."); Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008) (internal quotation marks and citation omitted) ("[H]armless error . . . exists when it is clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination.").  In this case, the ALJ's assessed RFC limited Plaintiff to "occasional interaction with the public," which was less restrictive than Dr. Petzelt's assessed limitation of "no contact with the general public." (AR at 23, 80.)  The ALJ did not incorporate the more restrictive no public contact limitation in his hypothetical questions to the VE. (See id. at 57–62.)  Based on the VE's testimony, the ALJ determined that Plaintiff was able to perform her past relevant work of a cook helper (DOT 317.687-010)[11] as Plaintiff actually performed that job, and that Plaintiff was therefore not disabled. (Id. at 25–26.)  It is unclear how the VE would have testified had the ALJ included the more restrictive limitation of no public contact in the hypotheticals he posed to the VE, and whether the ALJ would still have concluded that Plaintiff was not disabled.  As such, the Court finds that the ALJ's error was not harmless.  See Chad

---

[11]  DOT describes the "cook helper" position in relevant part as follows:

> Assists workers engaged in preparing foods for hotels, restaurants, or ready-to-serve packages by performing any combination of following duties: Washes, peels, cuts, and seeds vegetables and fruits.  Cleans, cuts, and grinds meats, poultry, and seafood.  Dips food items in crumbs, flour, and batter to bread them.  Stirs and strains soups and sauces.  Weighs and measures designated ingredients.  Carries pans, kettles, and trays of food to and from work stations, stove, and refrigerator.  Stores foods in designated areas, utilizing knowledge of temperature requirements and food spoilage.  Cleans work areas, equipment and utensils, segregates and removes garbage, and steam-cleans or hoses garbage containers [KITCHEN HELPER (hotel & rest.) 318.687-010].  Distributes supplies, utensils, and portable equipment, using handtruck.

DICOT 317.687-010, 1991 WL 672752.

B. v. Kijakazi, Case No.: 20cv1431-CAB(MSB), 2021 WL 5564496, at *10 (S.D. Cal. Nov. 29, 2021) (finding that the error was not harmless, where the ALJ failed to properly consider plaintiff's [limitations at issue] when assessing plaintiff's RFC, where it was unclear "how the VE would have testified had more restrictive limitations been included in the hypotheticals posed to the VE"); Godfrey v. Saul, Case No.: 20-CV-917-WVG, 2021 WL 3810561, at *17 (S.D. Cal. Aug. 26, 2021) (finding that the ALJ's error was not harmless, where the ALJ "might re-evaluate the RFC in its entirety").

The Court therefore **RECOMMENDS** that the District Judge find that the ALJ improperly evaluated the medical source opinion of State agency psychologist, Dr. Petzelt, that Plaintiff should not interact with the public. The Court further **RECOMMENDS** that the District Judge find that the ALJ's error was not harmless.

**B.** **The ALJ Improperly Evaluated the Opinion of Dr. Hilborn**

**1. Parties' arguments**

Plaintiff argues that the ALJ failed to properly evaluate the opinion of consultative examiner, Dr. Hilborn, who opined that Plaintiff was capable of following one- and two-step instructions to carry out tasks, and was "somewhat impaired" in her ability to interact effectively with peers and coworkers. (J. Mot. at 14–18, 22–23.) Plaintiff alleges that the ALJ failed to evaluate the supportability of Dr. Hilborn's opinion, and contends that this error was not harmless. (Id. at 15–16.) Plaintiff claims that an individual restricted to one- to two-step tasks cannot perform DOT occupations requiring Level Two reasoning. (Id. at 16.) Plaintiff asserts that because the ALJ did not incorporate the restriction Dr. Hilborn assessed into Plaintiff's RFC and into his hypothetical questions to the VE, substantial evidence does not support the ALJ's finding that Plaintiff could perform a cook helper job, because the job requires Level Two reasoning. (Id.) Plaintiff also argues that contrary to Dr. Hilborn's finding that Plaintiff was "somewhat impaired" in her ability to interact effectively with peers and coworkers, the ALJ did not incorporate such restriction into Plaintiff's RFC and hypothetical questions to the VE, further amplifying the ALJ's error. (Id. at 16–17.)

Defendant responds that the ALJ reasonably evaluated Dr. Hilborn's opinion.  (<u>Id.</u> at 18–22.)  Defendant alleges that the ALJ properly discounted Dr. Hilborn's opinion because it was "vague." (<u>Id.</u> at 17–18.)  Defendant further argues that even if the ALJ erred by not analyzing the supportability of Dr. Hilborn's opinion, "any omission by the ALJ" was harmless because the ALJ reasonably accounted for Dr. Hilborn's assessed limitations by "translating and incorporating" them into Plaintiff's RFC.  (<u>Id.</u> at 20.) Defendant also contents that Plaintiff does not demonstrate that the record supported a more restrictive RFC assessment.  (<u>Id.</u> at 21.)

### 2. Applicable law

The applicable legal standards are listed in Section VI.A.2.  Accordingly, the Court will not restate them in this section.

### 3. Analysis

Dr. Hilborn, a Clinical Psychologist, conducted a consultative examination of Plaintiff and opined, in relevant part, that Plaintiff was capable of following one- to two-step oral instructions to carry out tasks, and was "somewhat impaired" in her ability to interact with peers and coworkers.  (AR at 671, 673.)  The ALJ discounted Dr. Hilborn's opinion as "vague as to the extent of the claimant's 'impairments'." (<u>Id.</u> at 25.)  The ALJ further stated that "the finding that the claimant can perform at least one- to two[-]step tasks is consistent with the state agency findings that [Plaintiff] can perform simple tasks and instructions," and with Plaintiff's "work activity in an unskilled position as a breakfast attendant." (<u>Id.</u>)

The parties do not dispute that the ALJ considered the consistency of Dr. Hilborn's opinion that Plaintiff could follow one- and two-step instructions to carry out tasks, and found that the opinion was consistent with other evidence in the record.  (See J. Mot. at 17, 19–20; AR at 25.)  However, as Plaintiff points out and Defendant appears to concede, the ALJ did not address the supportability of Dr. Hilborn's opinion.  (See AR at 25; <u>see also</u> J. Mot. at 15–16, 20–21.)  The Court has carefully reviewed the ALJ's discussion of Dr. Hilborn's opinion and notes that it is completely devoid of any analysis

of the opinion's supportability.  (See AR at 18–27).  Because the ALJ did not explain how he considered the supportability of Dr. Hilborn's medical opinion, the ALJ erred. See 20 C.F.R. § 416.920c(b)(2) (requiring an ALJ to articulate how the ALJ considered the supportability and consistency factors for a medical source's opinion); see also Cross v. O'Malley, 89 F.4th 1211, 1214 (9th Cir 2024) ("ALJs must explain how persuasive they find the medical opinion by expressly considering the two most important factors for evaluating such opinions: 'supportability' and 'consistency.'").

The Court must next determine whether the ALJ's error was harmless—whether it was inconsequential to the ALJ's ultimate nondisability determination.  See Rounds, 807 F.3d at 1007; Tommasetti, 533 F.3d at 1038.  Courts have found that an ALJ's failure to articulate his consideration of the supportability factor was harmful error, where the court could not conclude that had the ALJ fully considered the supportability of the medical opinion at issue, the ALJ would not have reached a different decision.  See David C. v. Comm'r of Soc. Sec., Case No.: 23-cv-0655-WQH-MMP, 2024 WL 3596856, at *10 (S.D. Cal. July 31, 2024) (finding that the ALJ's failure to explain how he considered the supportability factor was not harmless error even where substantial evidence supported the ALJ's consideration of the consistency of the medical source's opinion); Damon R v. Dudeck, Case No. 4:24-cv-00156-BLW-REP, 2025 WL 955574, at *3 (D. Idaho Mar. 31, 2025) (finding that the ALJ's failure to articulate his consideration of the supportability factor was harmful error, because the court was not able to conclude, based on the record before it, that had the ALJ fully considered the supportability of the medical opinion at issue, the ALJ would not have reached a different decision).

In this case, the ALJ determined that Plaintiff had the RFC to perform light work,[12] except Plaintiff was limited to "understanding, remembering, and carrying out simple,

---

[12]  Light work is defined as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds."  20 C.F.R. § 416.967(b).

routine, and repetitive tasks," and "occasional interaction with the public." (AR at 23.) At step four of his sequential evaluation process, the ALJ found that Plaintiff was capable of performing her past relevant work as a cook helper, as Plaintiff actually preformed that job, and that Plaintiff was therefore not disabled. (Id. at 26–27.) The cook helper position requires Level Two reasoning, which requires the claimant to: "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions. Deal with problems involving a few concrete variables in or from standardized situations." DICOT 317.687-010, 1991 WL 672752. In contrast, Level One reasoning requires the claimant to "[a]pply commonsense understanding to carry out simple one- or two-step instructions. Deal with standardized situations with occasional or no variables in or from these situations encountered on the job." Rounds, 807 F.3d at 1003 (citing GED Reasoning Levels, App. C, § III, 1991 WL 688702). Therefore, an individual restricted to one- to two-step tasks may not be able to perform occupations requiring Level Two reasoning. See Rounds, 807 F.3d at 1003 (holding that the limitation of "one to two step tasks" in the claimant's RFC was in conflict with jobs that required Level Two reasoning); see also Leach v. Kijakazi, 70 F.4th 1251, 1256 (9th Cir. 2023) (noting that "[t]he key distinction between [Level One and Level Two] reasoning is that level-one jobs require instructions involving at most two steps, whereas level-two jobs may require 'detailed'—that is, potentially longer—instructions").

In this case, the ALJ identified only one job that Plaintiff could perform, which required greater reasoning abilities than those Dr. Hilborn assessed for Plaintiff. Had Plaintiff's RFC included the limitation to one- and two-step instructions to carry out tasks that Dr. Hilborn assessed for Plaintiff, there would be an apparent conflict between Plaintiff's RFC and the ALJ's identified job of the cook helper, which requires Level Two reasoning. Because the ALJ did not adequately explain his basis for rejecting the limitation assessed by Dr. Hilborn, and did not recognize there was a conflict to resolve, the ALJ's error was not harmless. See Little v. Berryhill, 708 F. App'x 468, 470 (9th Cir. 2018) (finding that the ALJ committed a harmful error by improperly discounting

medical opinion; concluding that had the claimant's RFC included the "simple one- to two-step instruction" language included in the medical opinion at issue, there would be an "apparent conflict" between the claimant's RFC and the ALJ's identified job, which required Level Two reasoning); Pallesi v. Berryhill, 696 F. App'x 798, 801 (9th Cir. 2017) (finding that the ALJ committed a harmful error by improperly discounting medical opinion; reasoning that had the ALJ not improperly discounted the opinion, the ALJ might have assigned an RFC limited to one- or two-step tasks, which "would be inconsistent with the jobs in the ALJ's opinion, all of which required Level Two reasoning").  Accordingly, a proper evaluation of the supportability of Dr. Hilborn's opinion may have impacted the RFC the ALJ assessed for Plaintiff, the hypothetical questions the ALJ posed to the VE, and the ALJ's ultimate nondisability determination. The Court therefore finds that the ALJ's error was not harmless.

The Court further notes that to the extent the ALJ discounted Dr. Hilborn's opinion that Plaintiff was "somewhat impaired" in her ability to interact effectively with peers and coworkers because the opinion was "vague," the ALJ did not provide any further analysis or explanation.  (See AR at 25); see also Embrey v. Bowen, 849 F.2d 418, 421–22 (9th Cir. 1988) ("The ALJ must do more than offer his conclusions.  He must set forth his own interpretations and explain why they, rather than the doctors', are correct."); Mendiola v. Berryhill, CASE NO. 2:17-cv-01904-DWC, 2018 WL 2455441, at *3 (W.D. Wash. June 1, 2018) ("[A]n ALJ may not reject a medical opinion in a vague or conclusory manner").  The Court also notes that although the RFC the ALJ assessed for Plaintiff contained a limitation to occasional interaction with the "public," Dr. Hilborn's limitation concerned "peers and coworkers."  (See AR at 22, 673.)  Because none of the hypothetical questions the ALJ posed to the VE contained such limitation, (see id. at 57–62), and for the same reasons as discussed in Section VI.A.3, the Court finds that the ALJ committed a harmful error.

/ / /

/ / /

24cv1487-W(LR)

The Court therefore **RECOMMENDS** that the District Judge find that the ALJ improperly evaluated the opinion of State agency psychologist, Dr. Hilborn.  The Court further **RECOMMENDS** that the District Judge find that the ALJ's error was not harmless.

## C. The ALJ Failed to Develop the Record Regarding the Mental Demands of Plaintiff's Past Relevant Work

### 1. Parties' arguments

Plaintiff contends that the ALJ failed to develop the record regarding the mental and physical demands of Plaintiff's past relevant work to substantiate the finding that Plaintiff could perform such work as actually performed.  (J. Mot. at 23–26.)  Plaintiff asserts that the ALJ did not ask any questions during the administrative hearing regarding the mental demands of Plaintiff's past work as a breakfast attendant, including whether she performed more than simple tasks and whether she had to regularly interact with the public.  (Id. at 25.)  Additionally, Plaintiff states that the VE did not explain why she classified the physical exertion level required at Plaintiff's past relevant job as light exertion, despite Plaintiff's testimony that she had to lift a box of eggs, which Plaintiff opines had to weigh at least thirty pounds, thereby exceeding the light exertion lifting capacity identified in her RFC.  (Id. at 25–26.)  Plaintiff therefore claims that the ALJ committed a harmful error, and further development of the record is necessary to determine the mental and physical functional demands of her past relevant work as a breakfast attendant.  (See id. at 26.)

Defendant responds that the ALJ properly developed the record and reasonably relied on the VE's testimony to find that Plaintiff could perform her past relevant work.  (Id. at 26–29.)  Defendant claims that the ALJ considered Plaintiff's statements in her Work History Report and obtained additional testimony from Plaintiff during the administrative hearing regarding her past relevant work, as well VE's testimony.  (Id. at 28.)  Defendant argues that Plaintiff's testimony regarding her past work was "highly probative," and the VE's testimony that Plaintiff could perform past relevant work as

24cv1487-W(LR)

actually performed was "inherent[ly] reliabl[e]." (Id. at 28–29.) Defendant also contends that the ALJ reasonably relied on Plaintiff's testimony, written responses, and the VE's testimony, to find that Plaintiff could perform her past relevant work of cook helper as she "actually performed" that work. (See id. at 28.)

### 2. Applicable law

"[T]he ALJ has a special duty to develop the record fully and fairly and ensure that the claimant's interests are considered, even when the claimant is represented by counsel." Mayes v. Massanari, 276 F.3d 453, 459 (9th Cir. 2001). "An ALJ's duty to develop the record further is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." Id. at 459–60.

At step four of the sequential evaluation process, the claimant has the burden to prove that she cannot perform her past relevant work "either as actually performed or as generally performed in the national economy." See Lewis v. Barnhart, 281 F.3d 1081, 1083 (9th Cir. 2002). Although the burden of proof lies with the claimant at step four, "the ALJ still has a duty to make the requisite factual findings to support his conclusion." Pinto v. Massanari, 249 F.3d 840, 844 (9th Cir. 2001). A determination that a claimant has the capacity to perform past relevant work must contain the following specific findings of fact: (1) the claimant's RFC; (2) the physical and mental demands of the claimant's past job or occupation; and (3) that the claimant's RFC permits the claimant to return to the past job or occupation. SSR 82–62, 1982 WL 31386, at *4 (1982). Adequate documentation of past work includes "factual information about those work demands which have a bearing on the medically established limitations." Id. at *3. A claim involving mental impairment requires "precise description of the particular job duties which are likely to produce tension and anxiety, e.g., speed, precision, complexity of tasks, independent judgements, working with other people, etc., in order to determine if the claimant's mental impairment is compatible with the performance of such work." Id. Any determination regarding a claimant's ability to perform past work "must be developed and explained fully in the disability decision." Id.

Occupational evidence provided by a VE should generally be consistent with the occupational information contained in the DOT.  See SSR 00-4p, 2000 WL 1898704, at *2 (Dec. 4, 2000).  When a VE provides evidence about the requirements of a claimant's past job, the ALJ has "an affirmative responsibility to ask about any possible conflict" between the VE's evidence and the DOT, and to ask for a reasonable explanation for any deviation.  See id. at *4;[13] see also Massachi v. Astrue, 486 F.3d 1149, 1152–53 (9th Cir. 2007) (providing that an ALJ is required to inquire whether the VE's testimony conflicts with the DOT and to obtain a reasonable explanation for any conflict).  A conflict between the VE's testimony and the DOT exists when the VE's testimony is "obviously or apparently contrary" to the DOT's listing of job requirements that are "essential, integral, or expected."  Gutierrez v. Colvin, 844 F.3d 804, 808 (9th Cir. 2016).  The ALJ may rely on VE testimony that contradicts the DOT if the record contains persuasive evidence to support the deviation from the DOT.  See Massachi, 486 F.3d at 1153; Johnson v. Shalala, 60 F.3d 1428, 1435 (9th Cir. 1995).

### 3. Analysis

The ALJ found that Plaintiff had the RFC to perform light work, except Plaintiff was limited to understanding, remembering, and carrying out simple, routine, and repetitive tasks, as well as to occasional interaction with the public.  (AR at 22.)

---

[13]   The Court notes that Social Security Ruling ("SSR") 00-4p, requiring the ALJ to resolve conflicts between VE occupational information and the DOT was in effect at the time of the ALJ's decision, which was issued on February 26, 2024.  (See AR at 17–26); see also SSR 00-4p, 2000 WL 1898704, at *2.  On January 6, 2025, the agency rescinded SSR 00-4p, and replaced it with SSR 24-3p, which "no longer require[s] [the agency's] adjudicators to identify and resolve conflicts between occupational information provided by [vocational specialists] and VEs and information in the DOT."  Social Security Ruling, SSR 24-3p; Titles II and XVI: Use of Occupational Information and Vocational Specialist and Vocational Expert Evidence in Disability Determinations and Decisions, 89 Fed. Reg. 97158-01, 97158 (Dec. 6, 2024).  However, rule SSR 24-3p explicitly states that the agency "expect[s] that Federal courts will review our final decisions using the rules that were in effect at the time we issued the decisions."  Id. at 97159 n.1 (emphasis added).  Accordingly, the Court applies SSR 00-4p in this Report and Recommendation.

Although Plaintiff's RFC included specific mental limitations, the record did not contain any description or explanation of mental demands of Plaintiff's breakfast attendant position.  Without this information, the ALJ could not meaningfully analyze whether Plaintiff's work duties involved simple, routine, or repetitive tasks—a mental limitation set out in Plaintiff's RFC.  (See id.); see also SSR 82–62, 1982 WL 31386, at *3 (requiring "precise description" of the claimant's job duties, including "complexity of tasks" and "working with other people," to "determine if the claimant's mental impairment is compatible with the performance of such work"); Pinto, 249 F.3d at 844–45 (providing that the ALJ has a duty to make the requisite factual findings regarding the mental and physical demands of the claimant's past relevant work).  In addition, the record did not contain any information regarding the frequency of Plaintiff's interactions with the public while she worked as a breakfast attendant, which was another mental limitation listed in Plaintiff's RFC.  (See AR at 22.)  Thus, the ALJ failed to develop the record regarding the mental demands of Plaintiff's past relevant work.

With respect to physical demands of Plaintiff's past relevant work, Plaintiff stated in her Work History Report and testified during the administrative hearing that she "cook[ed] breakfast all day," carried boxes of eggs,[14] lifted up to ten pounds, and had to "handle, grab or grasp big objects."  (See id. at 58–59, 244–45.)  Additionally, Plaintiff specified that she had to walk, sit, climb, kneel, and "handle, grab or grasp big objects" for one hour per day, stand for five hours per day, and lift and carry objects from counter to counter daily.  (Id. at 245.)

---

[14]  Plaintiff did not specify and could not estimate during her administrative hearing testimony the weight of the box of eggs that she had to lift in her breakfast attendant position, but she specifically testified that the box she lifted contained approximately twenty-seven eggs.  (See AR at 58–59.)  As such, Plaintiff's assertion in the Joint Motion that it was "likely" that during her testimony she was referring to a "case" of eggs, which contained approximately three-hundred-and-sixty eggs and weighed thirty pounds, is purely speculative and directly contradicts Plaintiff's administrative hearing testimony. (See J. Mot. at 25–26.)

1      The VE classified Plaintiff's past relevant work as a "cook helper" (DOT 317.687-

2  010), and stated that although the DOT specified that the job involved a medium

3  exertional level, Plaintiff actually performed the job at a light exertional level.  (Id. at 59.)

4  The ALJ identified the conflict and asked the VE whether the VE's testimony was

5  consistent with the DOT, and the VE noted the deviation in exertional levels and stated

6  that the deviation was based on her "education, training, and experience."  (See id. at 60–

7  61.)  The ALJ relied on the VE's testimony and concluded that Plaintiff actually

8  performed her past relevant work at a light exertional level.  (See id. at 26.)  Because the

9  ALJ did not obtain a reasonable explanation from the VE for the conflict between the

10  VE's testimony and the DOT before relying on the VE's testimony that Plaintiff actually

11  performed her past relevant work at a light exertional level, the ALJ erred.  See

12  Tommasetti, 533 F.3d at 1042 (finding that the ALJ erred at step four when she "deferred

13  to the VE's personal knowledge and experience as superseding the DOT," where the

14  VE's testimony was "brief and indefinite"); Lance Paul E. v. O'Malley, No. 4:23–CV–

15  00217–DKG, 2024 WL 1885821, at *6–7 (D. Idaho Apr. 30, 2024) (stating that

16  "[r]elying on the [VE's] experience is not the same as obtaining a reasonable explanation

17  for the conflict" between the VE's testimony and the DOT; finding that the ALJ's

18  reliance on the VE's experience was insufficient, where the ALJ failed to obtain an

19  explanation that addressed the conflict in adequate detail); Barbour v. Colvin, Case No.

20  3:15–cv–00380–HDM–WGC, 2016 WL 7383351, at *9 (D. Nev. July 29, 2016)

21  (explaining that the VE's reliance on experience to substantiate his testimony was

22  insufficient, where the VE did not explain how his experience supported his conclusion;

23  reasoning that "[t]he ALJ's broad statement concerning the VE's vague experience in

24  placing people in [jobs at issue] d[id] nothing to clarify how [p]laintiff [wa]s able to

25  perform the [job at issue] at the light level").

26      Having concluded that the ALJ erred, the Court needs to determine whether the

27  ALJ's error was harmless.  See Rounds, 807 F.3d at 1007; Tommasetti, 533 F.3d at 1038.

28  Without any information in the record regarding the mental demands of Plaintiff's past

relevant work, the Court cannot determine whether the ALJ's step four finding was supported by substantial evidence, and this error therefore was not harmless.  See Geraldine C. B. v. Kijakazi, Case No.: 21-cv-1750-DEB, 2023 WL 6390432, at *4 (S.D. Cal. Sept. 29, 2023) (finding that the ALJ's error was not harmless, where "[t]he record call[ed] into question whether" plaintiff could have performed the requirements of past relevant work positions "given his mental limitations"; noting that "[a] properly formulated RFC might contain mental health limitations inconsistent with the [past relevant work positions] the ALJ found Plaintiff could perform"); Carlson v. Berryhill, Case No. 18-cv-03107-LB, 2019 WL 1116241, at *18 (N.D. Cal. Mar. 10, 2019) (finding that the ALJ committed harmful error, where the court "c[ould] not determine what would have happened had the ALJ considered the plaintiff's mild mental impairments when assessing the RFC or how the vocational experts would have testified had that limitation been included in the hypotheticals posed").

With respect to physical demands of Plaintiff's past relevant work, while the ALJ erred by not obtaining a reasonable explanation from the VE for the deviation from the DOT regarding exertional levels, this error was harmless.  The record contained Plaintiff's Work History Report, which indicated that ten pounds was the heaviest weight Plaintiff lifted and the weight she frequently lifted in her breakfast attendant position, as well as Plaintiff's testimony that she had to lift a box of eggs that contained approximately twenty-seven eggs.  (See id. at 58–59, 245.)  This evidence supported the VE's testimony that Plaintiff actually performed her past relevant work at a light exertional level.  See 20 C.F.R. § 416.967(b) (defining "light work" as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds").

Nevertheless, as discussed above, due to the ALJ's failure to develop the record regarding the mental demands of Plaintiff's past relevant work to substantiate the finding that Plaintiff could perform such work as she actually performed it, the ALJ's error at step four was not harmless.  Notably, although the ALJ found that Plaintiff's return to her

24cv1487-W(LR)

breakfast attendant job in March 2022, was an "unsuccessful work attempt," (AR at 19), the ALJ concluded, without any additional explanation, that Plaintiff could perform this very same job as she actually performed it in the past, (see id. at 25–26).  Additionally, the ALJ did not proceed to step five of the sequential evaluation process and did not identify if there was any other work that Plaintiff could perform, (see id. at 26), thereby further supporting the Court's conclusion that the ALJ's error at step four was not harmless.

For all the reasons stated above, the Court **RECOMMENDS** that the District Judge find that the ALJ erred by failing to develop the record regarding the mental demands of Plaintiff's past relevant work to substantiate the finding that Plaintiff could perform such work as she actually performed it.  The Court further **RECOMMENDS** that the District Judge find that the ALJ's error was not harmless.

## VII.  REMEDY

Plaintiff moves to reverse the Commissioner's decision and remand for further proceedings, while Defendant asks the Court to affirm the Commissioner's decision. (See J. Mot. at 29; see also id. at 12, 17–18, 22, 26.)  The reviewing court may enter a judgment "affirming, modifying, or reversing" the Commissioner's decision.  42 U.S.C. § 405(g).  The reviewing court may also remand the case to the Social Security Administration for further proceedings.  Id.  The decision whether to remand for further proceedings or for immediate payment of benefits is within the discretion of the court. Id.; Treichler v. Comm'r of Soc. Sec. Admin., 775 F.3d 1090, 1099 (9th Cir. 2014).  A remand for an immediate award of benefits is appropriate only in rare circumstances.  See Brown-Hunter v. Colvin, 806 F.3d 487, 495 (9th Cir. 2015). "[T]he district court should credit evidence that was rejected during the administrative process and remand for an immediate award of benefits if (1) the ALJ failed to provide legally sufficient reasons for rejecting the evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited."  Benecke

v. Barnhart, 379 F.3d 587, 593 (9th Cir. 2004) (citing Harman v. Apfel, 211 F.3d 1172, 1178 (9th Cir. 2000)).  However, "[i]f additional proceedings can remedy defects in the original administrative proceedings, a social security case should be remanded."  Lewin v. Schweiker, 654 F.2d 631, 635 (9th Cir. 1981).

The Court finds that further administrative proceedings will serve a meaningful purpose in this case by allowing the ALJ to properly evaluate the opinions of Drs. Petzelt and Hilborn, and, if warranted, reassess Plaintiff's RFC.  Further administrative proceedings will also allow the ALJ to develop the record regarding the mental demands of Plaintiff's past relevant work, and determine whether Plaintiff can perform her past relevant work or whether there are any available jobs that Plaintiff can perform.  The Court therefore **RECOMMENDS** that the District Judge find that remand for further proceedings is appropriate.

## VIII.  CONCLUSION AND RECOMMENDATION

For the foregoing reasons, the Court **RECOMMENDS** that the Commissioner's decision be **REVERSED**, and that Judgment be entered reversing the decision of the Commissioner and remanding this matter for further administrative proceedings.

**IT IS ORDERED** that no later than **August 13, 2025**, any party to this action may file written objections with the Court and serve a copy on all parties.  The document should be captioned "Objections to Report and Recommendation."

**IT IS FURTHER ORDERED** that any reply to the objections shall be filed with the Court and served on all parties no later than **August 20, 2025**.  The parties are advised that failure to file objections within the specified time may waive the right to

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

24cv1487-W(LR)

raise those objections on appeal of the Court's order.  See Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998); Martinez v. Ylst, 951 F.2d 1153, 1157 (9th Cir. 1991).

**IT IS SO ORDERED.**

Dated:  July 30, 2025

Honorable Lupe Rodriguez, Jr.
United States Magistrate Judge

24cv1487-W(LR)